WESLEY BARTHOLOMEW, Defendant Below, Appellant,
v.
STATE OF DELAWARE, Plaintiff Below, Appellee.
No. 573, 2006.
Supreme Court of Delaware.
Submitted: May 2, 2007.
Decided: May 22, 2007.
Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

ORDER
MYRON T. STEELE, Chief Justice.
This 22nd day of May 2007, it appears to the Court that:
(1) Defendant-appellant, Wesley Bartholomew, appeals from Superior Court convictions of twenty-five counts of Rape First Degree, one count of Continuous Sexual Abuse of a Child, eight counts of Sexual Solicitation of a Child, and one count of Indecent Exposure First Degree. Bartholomew makes two arguments on appeal. First, he contends that there was insufficient evidence to support twenty-eight of his convictions. He contends that the complainant's testimony was too "generic" because the complainant could not specify the exact number of times the alleged offenses took place or the general time frame in which the crimes allegedly occurred. Therefore, Bartholomew argues, the evidence failed to establish each element of the offenses beyond a reasonable doubt. Second, Bartholomew contends that the trial judge prejudicially deprived him of a fair trial when he refused to sever two of the counts involving a single complainant from thirty-three counts involving another complainant. After consideration of the record, we hold that the evidence sufficiently supported Bartholomew's convictions. The complainants testified in sufficient detail about Bartholomew's acts and the general time frame in which they occurred. Furthermore, the trial judge did not abuse his discretion by denying Bartholomew's motion to sever. Bartholomew committed similar offenses against members of the same family during the same time period. Bartholomew failed to establish actual prejudice resulting from joinder of the charges under those factual circumstances. Accordingly, we AFFIRM.
(2) From 2001 to 2004,[1] Sheila, her five children, and her boyfriend, Bartholomew, lived in Harrington, Delaware. Sheila and her daughter worked at night. Bartholomew, who did not work, watched Sheila's sons while she and her daughter worked.
(3) Kevin and David[2] told their father, Richard, that Bartholomew had sexually abused them while they lived with Bartholomew in Harrington. Richard took the boys to the Harrington Police Department and filed an official complaint against Bartholomew.
(4) On December 5, 2005, a Kent County grand jury indicted Bartholomew on twenty-five counts of Rape First Degree, one count of Continuous Sexual Abuse of a Child, eight counts of Sexual Solicitation of a Child, and one count of Indecent Exposure First Degree. On the first day of trial, the State amended count 34 to change the name of the alleged victim from David to Kevin. At the conclusion of the State's case, Bartholomew moved for a judgment of acquittal on all counts. The trial judge denied the motion. On September 25, 2006, a jury convicted Bartholomew on all counts. The trial judge sentenced him to 396 years at Level V followed by decreasing levels of probation. Bartholomew appealed.
(5) At trial, David and Kevin testified that Bartholomew sexually abused them during the period they lived together in Harrington, Delaware. They testified that Bartholomew asked them (and one of their brothers, Brian) on three occasions in 2001 to watch pornographic movies with him and masturbate. David complied the third time, but Brian and Kevin did not.
(6) Kevin testified that a few weeks after these incidents, Bartholomew called him into the laundry room to clean a floor vent. When Kevin looked up, Bartholomew had his pants down and an erect penis. When Bartholomew asked him to engage in fellatio, Kevin left the room.
(7) David testified that Bartholomew once awakened him in the middle of the night and sodomized him. David also recounted a time when Bartholomew offered him $200 to "suck his penis." David complied. Bartholomew did not pay him.
(8) In addition to these specific incidents, David testified that Bartholomew sodomized him on other occasions. He testified that Bartholomew performed anal sex on him "more than eight" times, and that he performed anal sex on Bartholomew "more than five times." David testified that he performed oral sex on Bartholomew "more than five" times. He testified that Bartholomew asked him to watch pornography "more than five times," and that he masturbated in front of Bartholomew "more than five times."
(9) Both David and Kevin testified that they did not tell their mother because Bartholomew told them he would hurt them if they did and that he would prevent them from visiting their father on the weekends. Sheila stated at trial that there had been charges for pornographic movies on her television bill, and that when Bartholomew moved out of her home, he possessed pornographic material. The Delaware Child Advocacy Center interviewed David, Brian and Kevin about Bartholomew's alleged conduct on September 26, 2005. The State played a videotape of the interviews at the trial.
(10) After the State presented its evidence, Bartholomew moved for a judgment of acquittal on all of the thirty-five charges. The trial judge denied his motion.[3]
(11) Bartholomew first argues that because David's testimony about some of the alleged acts was "generic,"[4] it insufficiently supported twenty-eight of the convictions involving David. By "generic," Bartholomew apparently means that "[David] merely saying it happened multiple times, five times or eight times, is not sufficient for a rational trier of fact to conclude the rapes occurred on more than the two occasions that were described by David." We review insufficiency of the evidence claims to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5]
(12) Bartholomew urges this Court to adopt a three prong test which has been used in other jurisdictions to determine whether "generic testimony" sufficiently supports these similar allegations. Under the proposed three-prong test, a complainant must: (a) describe the kinds of acts that occurred with sufficient specificity; (b) testify about the number of acts with sufficient certainty; and, (c) provide a general time period in which the acts occurred.[6] Generic testimony will support multiple convictions "so long as a victim is able to describe the kind of act committed, the number of acts committed and the general time period in which they were committed."[7] The State contends that the evidence presented at trial satisfies this test. We agree.
(13) David testified in explicit detail about various sexual acts with Bartholomew. He testified about the number of times that the incidents occurred. He testified that the incidents occurred while he was living with Bartholomew in Harrington between 2001 and 2003, a definable, non-illusory, timeframe.[8] Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could easily find that the evidence supported the essential elements of each offense charged.
(14) Second, Bartholomew argues that the trial judge substantially prejudiced him when he denied his request to sever two charges arising from acts involving another complainant (Kevin) from the indictment. We review a trial judge's denial of a motion to sever for an abuse of discretion.[9]
(15) Joinder of parties and claims "promote[s] judicial economy and efficiency, provided that the realization of those objectives is consistent with the rights of the accused."[10] It is within the sound discretion of the trial judge to grant or deny a motion to sever.[11] In the context of a motion to sever, the defendant bears the burden of showing that substantial injustice resulted from a joint trial.[12] A claim of "mere hypothetical prejudice is not sufficient."[13]
(16) Bartholomew argues that Counts 34 and 35 of the indictment, those involving alleged acts with Kevin, were unrelated to the rest of the counts in the indictment because they involved a different complainant (David), a different time, a different location, and different conduct than the other thirty-three counts. Furthermore, Bartholomew argues that the evidence presented about Bartholomew's alleged conduct with David could have led to an inference of a "general criminal disposition" resulting in convictions for conduct allegedly involving Kevin by implication alone.
(17) The actual trial testimony persuades us that the offenses are sufficiently related so that the jury could not have been misfocused away from their duty to examine the elements of the offenses allegedly perpetrated on Kevin. As the trial judge correctly explained, "the State can group counts involving multiple victims so long as the victims and the acts of the Defendant are part of a conscious scheme or plan that happened at the same time or in close proximity to each other." Here, Bartholomew committed similar offenses against members of the same family during the same time period and at the same location. Each of the complainants testified separately about "their" incidents and presented sufficient evidence supporting the elements of the offenses arising from those incidents. Simply because some of the alleged acts did not occur contemporaneously does not necessarily lead to a conclusion that the counts are so wholly unrelated that a failure to sever them would substantially prejudice Bartholomew by confusing the jury about its role and therefore deny him a fair trial. Bartholomew has not met his burden of establishing actual prejudice resulting from joinder of the charges. Therefore, the trial judge did not abuse his discretion when he denied the motion to sever.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Sheila testified that she, her children, and Bartholomew moved to a home in Harrington on September 15, 2001. Bartholomew moved out of the home on February 14, 2004. She moved out on May 27, 2004.
[2] Under Supreme Court Rule 7(d), the names of the parties are pseudonyms selected sua sponte by the Court.
[3] The trial judge stated:

I think there is evidence in the record that the defendant intentionally engaged in one or more of the acts defined as sexual intercourse with [David] in the time frame indicated in the indictments. [David] being under the age of 18 years while the defendant was in a position of authority relative to him, and that such act occurred 25 times to satisfy the 25 counts, according to the evidence provided by [David] through one form or another.
There is evidence that there were three or more such acts intentionally occurring over a period which exceeded three months. There is evidence that the Defendant requested of [David] acts defined as prohibited eight different times, and there is evidence that the defendant exposed his genitals to [Kevin], who was under the age of 16, in a manner likely to cause affront or alarm, all of these, again occurring in the time frame indicated in the indictments, and all occurred in Kent County, Delaware. So those motions are denied.
[4] Bartholomew does not challenge the sufficiency of the evidence on the counts involving Kevin.
[5] Williams v. State, 539 A.2d 164, 168 (1988) (citation omitted).
[6] California v. Jones, 792 P.2d 643, 655 (Cal. 1990); The Court stated:

It must be remembered that even generic testimony (e.g., an act of intercourse "once a month for three years") outlines a series of specific, albeit undifferentiated, incidents each of which amounts to a separate offense, and each of which could support a separate criminal sanction. . . Does the victim's failure to specify precise date, time, place or circumstance render generic testimony insufficient? Clearly not. As many of the cases make clear, the particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. . . The victim, of course, must describe the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., "twice a month" or "every time we went camping"). Finally, the victim must be able to describe the general time period in which these acts occurred (e.g., "the summer before my fourth grade," or "during each Sunday morning after he came to live with us") to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction.
See also Washington v. Jensen, 104 P.3d 717, 721 (Wash. App. Div. 2005).
[7] Gaxiola v. State, 119 P.3d 1225, 1235 (Nev. 2005) (explaining the California v. Jones test).
[8] David's direct examination (in pertinent part):

Prosecutor: Now, I'm going to ask you to recollect to the best of your ability back to 2001, early in the year, when you were all living at 49 Nevada Avenue in Harrington. Did there ever come a time where your mother had gone to work where you ever saw the defendant watching a porno movie? David: Yes.
* * *
Prosecutor: How long  over what period of time do you think, if you can recall, over what period of time did the defendant engage in these sexual activities with you or have you do these sexual things with him?
David: You mean time, like ten minutes, five?
Prosecutor: Weeks, months, years?
David: About three years.
Defense Counsel: Your Honor, may we approach?
(The following held at sidebar)
Defense counsel: I know in cases like this, the Court allows juvenile witnesses to have some latitude.
Trial judge: Excuse me?
Defense counsel: I know the Court in cases like this allows juvenile witnesses to have some latitude, but this young man just testified that the duration was about three years. The indictment only alleges events from 
Prosecutor: February '01 to April of '03.
Defense counsel: Right, which is a substantially shorter period. I don't know if he's going to intend to offer alleged bad acts or not. We're already beyond the dates stated in the indictment.
Trial judge: The references were about the same starting point extending further than the State is going to attempt to prove. Is that correct?
Prosecutor: Yes
Trial judge: I believe the testimony was early in the year 2001, and I think that's the same starting period, as I recall.
Prosecutor: Right.
Defense counsel: I don't know what else
Prosecutor: I won't.
Defense counsel: At this point, we can technically ask for an instruction on a motion to strike, but I don't want to emphasize anything.
Trial judge: I think it's a mistake of his
Defense counsel: That's my point, so I'm not going to ask for a limiting instruction.
Trial judge: Exactly.
Prosecutor: His time is probably off.
(Sidebar concluded)
Prosecutor: I am going to ask you to really tax your brain because I want you to concentrate on during the period you lived at 49 Nevada Avenue in Harrington between 2001 and 2003.
David: Mm-hmm.
Prosecutor: During that period when the defendant was living with you all, how many times do you think that he engaged in anal intercourse with you; that is, that as you put it, he stuck his penis in your butt?
David: Multiple times.
* * *
Prosecutor: If you had to out a number on multiple times, how many do you think it would be?
David: More than eight.
[9] Skinner v. State, 575 A.2d 1108, 1117-18 (Del. 1990).
[10] Wiest 542 A.2d 1193, 1195 (Del. 1988) (quoting Mayer v. State, 320 A.2d 713, 717 (Del. 1974)); Super. Ct. Crim. R. 8(a) provides:

Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
[11] Wiest v. State, 542 A.2d at 1195.
[12] Bradley v. State, 559 A.2d 1234, 1241 (Del. 1989); Wiest, 542 A.2d at 1195; see Super. Ct. Crim. R. 14 ("[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses. . . the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.")
[13] Skinner, 575 A.2d at 1118 (citing Bates, 386 A.2d 1139, 1142 (Del. 1978)).